1  Chet A. Kronenberg (State Bar No. 222335)
2  ckronenberg@stblaw.com
   SIMPSON THACHER & BARTLETT LLP
3  1999 Avenue of the Stars, 29th Floor
   Los Angeles, California  90067
4  Telephone:  (310) 407-7500
   Facsimile:   (310) 407-7502
5
   *Attorney for Defendants*
6
7              UNITED STATES DISTRICT COURT
8          FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
10 
11 WEST COAST HOTEL                    Case No. 2-20-cv-05663-VAP-DFM
   MANAGEMENT, LLC dba
12 UNIVERSITY SQUARE HOTEL OF          **DEFENDANTS' NOTICE OF**
   FRESNO; and WEST COAST              **MOTION AND MOTION TO**
13 ORANGE GROUP, LLC dba THE           **DISMISS**
   HOTEL FRESNO,
14                                     Date:  October 5, 2020
                    Plaintiffs,        Time:  2:00 p.m.
15                                     Courtroom:  8A—1st Street
              v.                                   Courthouse
16 
   BERKSHIRE HATHAWAY GUARD            [Filed concurrently herewith:
17 INSURANCE COMPANIES, a              Declaration of Chet A. Kronenberg,
   Pennsylvania Company; AMGUARD       Request for Judicial Notice; [Proposed]
18 INSURANCE COMPANY, a                Order]
   Pennsylvania Corporation; and DOES 1
19 through 25, inclusive,
20                  Defendants.
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 5, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the U.S. District Court for the Central District of California, United States Courthouse, 350 West 1st Street, Los Angeles, Courtroom 8A, 8th Floor, Defendants AmGUARD Insurance Company and Berkshire Hathaway Guard Insurance Companies (collectively, "AmGUARD"), through their undersigned counsel, hereby move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

AmGUARD seeks dismissal of this action because Plaintiffs have failed to adequately allege facts sufficient to state a claim upon which relief can be granted. This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Chet A. Kronenberg, the Request for Judicial Notice, the Proposed Order, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 27, 2020.

Dated: September 4, 2020        SIMPSON THACHER & BARTLETT LLP

By */s/ Chet A. Kronenberg*
CHET A. KRONENBERG

1999 Avenue of the Stars, 29th Floor
Los Angeles, CA  90067
Telephone:   (310) 407-7500
Facsimile:   (310) 407-7502
Email: ckronenberg@stblaw.com

*Attorney for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................... 2

    A.    The Parties and the Insurance Policy ..................................................... 2

    B.    The Complaint ........................................................................................ 3

    C.    The Policy ............................................................................................... 3

ARGUMENT ......................................................................................................... 5

I.    COVERAGE IS NOT AVAILABLE BECAUSE THE POLICY DOES NOT COVER LOSSES CAUSED "DIRECTLY OR INDIRECTLY" BY ANY VIRUS ................................................................................................ 6

II.    SEPARATE AND APART FROM THE VIRUS EXCLUSION, THE COMPLAINT DOES NOT PLEAD FACTS MEETING THE BASIC REQUIREMENTS FOR CIVIL AUTHORITY COVERAGE ...................... 9

    A.    There Is No Allegation that a Covered Cause of Loss Caused Property Damage Within One Mile of Plaintiffs' Hotels. ................... 10

    B.    The Orders Were Not Actions of Civil Authority Issued "In Response to Dangerous Physical Conditions" Resulting From Property Damage. .................................................................................. 10

    C.    The Orders Did Not Prohibit Access to Plaintiffs' Properties ............ 11

III.    THE ABSENCE OF ALLEGED DIRECT PHYSICAL LOSS OF OR DAMAGE TO PLAINTIFFS' HOTELS PRECLUDES ANY BUSINESS INCOME OR EXTRA EXPENSE CLAIM ............................ 12

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
  No. 2:20-cv-04418-SVW-AS (C.D. Cal. Aug. 28, 2020, *as amended* Sept. 2, 2020) ................................................................................................. 8, 10, 14

*Ausmus v. Lexington Ins. Co.*,
  No. 08-CV-2342 L LSP, 2009 WL 1098627 (S.D. Cal. Apr. 22, 2009), *aff'd,* 414 F. App'x 76 (9th Cir. 2011) ................................................................. 6

*Backroads Corp. v. Great N. Ins.*,
  2005 WL 1866397 (N.D. Cal. Aug. 1, 2005) ....................................................... 11

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) ................................................................................. 9

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ............. 7

*Doyle v. Fireman's Fund Ins. Co.*,
  21 Cal. App. 5th 33 (4th Dist. 2018) ..................................................................... 5

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
  Case No. 20-258-CB-C30 (Ingham County, Mich. Cir. Ct. July 1, 2020) ...... 7, 13

*Inns by the Sea v. Cal. Mut. Ins. Co.*,
  No. 20CV001274 (Cal. Super. Ct. Aug. 6, 2020) ............................................... 15

*Malaube, LLC v. Greenwich Ins. Co.*,
  No. 1:20-cv-22615-KMW, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ......... 13

*Martinez v. Allied Ins. Co. of Am.*,
  No. 2:20-cv-00401-JLB-NPM (M.D. Fla. Sept. 2, 2020) ..................................... 7

*Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*,
  No. CV06-4766 CAS, 2008 WL 3009889 (C.D. Cal. Mar. 20, 2008) .......... 10, 14

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
  187 Cal. App. 4th 766 (2d Dist. 2010) ........................................................... 10, 14

*N. Am. Health Care, Inc. v. Affiliated FM Ins. Co.*,
  No. SACV071388DOCAJW, 2009 WL 10673236 (C.D. Cal. Jan. 9, 2009) ........ 5

*Rose's 1, LLC v. Erie Ins. Exch.*,
  No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020) .......... 13

*Sapiro v. Encompass Ins.*,
  No. C 03-4587 MHP, 2004 WL 2496090 (N.D. Cal. Nov. 2, 2004) .................... 8

*Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   No. A-0170-15T1, 2017 WL 1731005 (N.J. App. Div. May 3, 2017) ................ 12

*Simon Mktg. v. Gulf Ins. Co.*,
   149 Cal. App. 4th 616 (2d Dist. 2007) .............................................. 13

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
   No. 20-Civ-3311 (VEC) (S.D.N.Y. May 14, 2020) ...................... 12, 14

*Syufy Enters. v. Home Ins. Co. of Ind.*,
   No. 94-Civ-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .......................... 11

*Tarakanov v. Lexington Ins. Co.*,
   441 F. Supp. 3d 887 (N.D. Cal. Feb. 26, 2020) ................................. 5, 6

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
   439 F.3d 128 (2d Cir. 2006) ......................................................... 11

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
   385 F. Supp. 2d 343 (S.D.N.Y. 2005) .................................................. 10

*Valley Casework, Inc. v. Lexington Ins. Co.*,
   No. D050683, 2008 WL 4726453 (Cal. Ct. App. Oct. 29, 2008) ......................... 9

*Victoria Fam. Ltd. Liab. Ltd. P'ship v. Ohio Sec. Ins. Co.*,
   Case No. 19-CV-2159-CAB-WVG, 2020 WL 4430994 (S.D. Cal. July 31, 2020) ........................................................................ 5, 8

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*,
   114 Cal. App. 4th 548 (4th Dist. 2003), *as modified on denial of reh'g* (Jan. 7, 2004) ........................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 6

**Other Authorities**

Barry R. Ostrager and Thomas R. Newman, Insurance Coverage Disputes §
   11.01 (19th ed. 2018) ................................................................ 9

Defendants AmGUARD Insurance Company and Berkshire Hathaway Guard Insurance Companies (collectively, "AmGUARD") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the Complaint of Plaintiffs West Coast Hotel Management, LLC and West Coast Orange Group, LLC ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to recover under their property insurance policy money they allegedly lost as a result of social-distancing orders issued in response to the COVID-19 virus. The suit must be dismissed because the insurance policy does not cover any loss caused "directly or indirectly" by a virus, or any loss that was concededly not caused by damage to "property."

Plaintiffs' hotels are located in Fresno, California. The Complaint alleges that orders issued by the Mayor of Fresno and the Governor of California in March 2020 denied public access to their properties, which caused Plaintiffs' losses. Plaintiffs seek a declaratory judgment that these losses are covered under their property insurance policy. Because the policy unambiguously does not cover the losses alleged, the Complaint should be dismissed.

*First*, there is no coverage under the policy absent a "Covered Cause of Loss." The cause of Plaintiffs' alleged loss is the COVID-19 virus, which is not a "Covered Cause of Loss." The policy defines "Covered Cause of Loss" to exclude "loss or damage caused directly or indirectly by . . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The policy also states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." The only plain, ordinary and reasonable reading of these provisions is that the

---

[1] Berkshire Hathaway Guard Insurance Companies is not a legal entity. Plaintiffs are insured by AmGUARD Insurance Company.

policy does not cover losses arising from the COVID-19 virus, including government directives issued in response to the virus.

*Second*, separate and apart from the virus exclusion, Plaintiffs' claim for Civil Authority coverage fails because: (i) there is no allegation of damage to property from a Covered Cause of Loss within one mile of Plaintiffs' restaurant; (ii) the generally applicable social-distancing orders, on their face, were not "actions of civil authority" taken "as a result of" damage to "property"—they were regulations seeking to reduce human transmission of the virus; and (iii) "access" to the areas surrounding Plaintiffs' hotels was not, in any event, "prohibited" by the social-distancing orders.

*Third*, insofar as the Complaint seeks coverage under the Business Income or Extra Expense sections of Plaintiffs' policy, it does not plead a loss caused by "direct physical loss of or damage to" Plaintiffs' hotels.  This is a threshold requirement for Business Income and Extra Expense coverage under the policy.  As the Honorable Stephen V. Wilson recently held in a similar case involving a restaurant, *see infra* at 16, social-distancing orders do not constitute "direct physical loss of or damage to" property and therefore losses caused by such orders are not covered.  The policy requirement that there be "direct physical loss of or damage to property" is consistent with the common-sense proposition that property insurers are not responsible any time some factor exogenous to the premises, such as a government regulation, limits a policyholder's operations in a way that reduces profitability.

For these reasons, the Complaint should be dismissed with prejudice.

## BACKGROUND

### A.     The Parties and the Insurance Policy

AmGUARD is a Pennsylvania-based insurance company licensed to write commercial property insurance in California. Compl. ¶ 4.  Plaintiffs purchased commercial property insurance from AmGUARD providing coverage for their

2

hotels in Fresno. *Id.* ¶¶ 10–12; Ex. 1. The governing insurance contract, Policy Number WEBP079586 (the "Policy"), *id.* ¶ 12, is attached as Exhibit 1 to the Complaint.

**B.   The Complaint**

Plaintiffs allege that due to stay-at-home orders issued by Lee Brand, the Mayor of Fresno, and Gavin Newsom, the Governor of California, the public was denied access to its hotels. *Id.* ¶¶ 23, 35. These orders required temporary closure of certain non-essential businesses. *Id.* ¶ 23. Plaintiffs contend (contrary to the text of the orders, which, along with the Shelter in Place order from Fresno City Manager Wilma Quan, are attached as Exhibits A–C (the "Orders") to the Kronenberg Declaration) that due to the Orders, "the public was denied access to" Plaintiffs' hotels and as a result, "Plaintiffs have suffered immense financial losses." *Id.* ¶¶ 23–24, 35.

**C.   The Policy**

   1.   <u>The Covered Cause of Loss Requirement / Virus Exclusion</u>

The relevant coverages of the Policy only respond to losses that result from a "Covered Cause of Loss." A Covered Cause of Loss is defined as "[r]isks of direct physical loss unless the loss is . . . [e]xcluded in Paragraph B. Exclusions in Section I." Compl., Ex. 1 at 55. Paragraph B(1)(j) excludes from a Covered Cause of Loss any "loss or damage caused directly or indirectly by . . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 67, 70. Further, it provides that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 67.

   2.   <u>Business Income Coverage</u>

The Policy covers:
the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. **The suspension must be caused by direct**

3

**physical loss of or damage to property at the described premises**. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 58 (emphasis added). The Business Income coverage only pays for loss sustained during "the period of restoration" that begins "72 hours after the time of direct physical loss or damage" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." *Id.* at 82.

    3.    Extra Expense Coverage

The Policy also covers "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred **if there had been no direct physical loss or damage to property at the described premises**. The loss or damage must be caused by or result from a Covered Cause of Loss." *Id.* at 60 (emphasis added). For Extra Expense coverage, the "period of restoration" begins "[i]mmediately after the time of direct physical loss or damage" and is otherwise defined as for Business Income. *Id.* at 82.

    4.    Civil Authority Coverage

The Policy provides that:

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) **Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage**, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) **The action of civil authority is taken in response to dangerous physical conditions resulting from the damage** or continuation

4
Memo of Points and Authorities in Support of Defendants' Motion to Dismiss
Case No. 2-20-cv-05663-VAP-DFM

>> of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 60–61 (emphasis added). Civil Authority coverage for lost business income begins "72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks." *Id.* at 61.

Based on the foregoing, Plaintiffs seek declarations that (i) the "safer-at-home/stay-at-home Orders" constitute civil authority orders that prohibit access to Plaintiffs' hotels; (ii) this prohibition of access is a covered cause of loss; (iii) the "prohibition of access was necessitated by physical loss of or damage to" the hotels (rather than a prohibition of access to the area immediately surrounding the hotels); (iv) the Orders trigger coverage under the Policy despite the virus exclusion; and (v) the Policy provides coverage for any current and future civil authority orders responding to COVID-19. *See* Compl., Prayer for Relief.

## **ARGUMENT**

The "interpretation of an insurance policy is a question of law" when determining whether a particular policy provides coverage. *Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 37 (4th Dist. 2018) (quoting *Hovannisian v. First Am. Title Ins. Co.*, 14 Cal. App. 5th 420, 430 (5th Dist. 2017)); *N. Am. Health Care, Inc. v. Affiliated FM Ins. Co.*, No. SACV071388DOCAJW, 2009 WL 10673236, at *2 (C.D. Cal. Jan. 9, 2009) (same). Courts "follow[] the general rules of contract interpretation" in reading insurance policies. *Tarakanov v. Lexington Ins. Co.*, 441 F. Supp. 3d 887, 898 (N.D. Cal. Feb. 26, 2020). "Where language is clear and explicit, it governs." *N. Am. Health Care*, 2009 WL 10673236, at *2; *see also Victoria Fam. Ltd. Liab. Ltd. P'ship v. Ohio Sec. Ins. Co.*, Case No. 19-CV-2159-CAB-WVG, 2020 WL 4430994, at *5 (S.D. Cal. July 31, 2020) (interpreting "clear and explicit meaning" of policy provisions "in their ordinary and popular sense").

Dismissal of the Complaint is required because, based on the facts it alleges and the unambiguous terms of the Policy, Plaintiffs are not entitled to any coverage. Fed. R. Civ. P. 12(b)(6); *Ausmus v. Lexington Ins. Co.*, No. 08-CV-2342 L LSP, 2009 WL 1098627, at *4 (S.D. Cal. Apr. 22, 2009) *aff'd,* 414 F. App'x 76 (9th Cir. 2011) (granting motion to dismiss because exclusion in insurance policy was clear and conspicuous); *Tarakanov*, 441 F. Supp. 3d at 898 (dismissing property insurance claim where plaintiff failed to plausibly allege insurer breached its obligations under the insurance policy).

## I. COVERAGE IS NOT AVAILABLE BECAUSE THE POLICY DOES NOT COVER LOSSES CAUSED "DIRECTLY OR INDIRECTLY" BY ANY VIRUS

Coverage under the Policy is only available when property loss or damage is caused by a "Covered Cause of Loss."[2] "Covered Cause of Loss" is specifically defined to exclude "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Compl., Ex. 1 at 67, 70. Losses arising from a virus are not covered "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 67.

Plaintiffs allege that their loss resulted from the social distancing Orders issued by the Governor of California and Mayor of Fresno in response to the virus. Compl. ¶¶ 19–24. Specifically, Plaintiffs claim that the Orders were issued "to halt the physical spread of COVID-19," *id.* ¶ 34, "an infectious disease caused by a virus." *Id.* ¶ 19. Because Plaintiffs' loss was "caused directly or indirectly" by

---

[2] *See* Compl., Ex. 1 at 58 (requiring that "[t]he loss or damage must be caused by or result from a *Covered Cause of Loss*" for Business Income coverage), 60 (providing Extra Expense Coverage for necessary Extra Expense incurred due to loss or damage "caused by or result[ing] from a *Covered Cause of Loss*"), 60–61 (providing Civil Authority coverage "[w]hen a *Covered Cause of Loss* causes damage to property") (emphasis added).

the COVID-19 virus, an excluded peril, there can be no coverage based on the plain and ordinary meaning of the terms of the Policy. *See Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (rejecting claims for coverage because the COVID-19 virus, an excluded peril, was the root cause rather than government orders issued to stop virus transmission); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, at *18–19 (Ingham County, Mich. Cir. Ct. July 1, 2020) (Transcript) (denying claims by two restaurants that sought coverage for loss caused by social distancing orders because similar virus exclusion was unambiguous and precluded coverage for losses arising from COVID-19);[3] *Martinez v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-JLB-NPM, at *5 (M.D. Fla. Sept. 2, 2020) (Order) (dismissing business income and civil authority claims made by dental practice "[b]ecause Martinez's damages resulted from COVID-19, which is clearly a virus, [so] neither the Governor's executive order . . . nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion").[4]

*Diesel Barbershop* is on point. In that case, a number of barbershops sought coverage for business interruption due to social-distancing orders. *Diesel Barbershop*, 2020 WL 4724305, at *2. The insurer denied coverage because the policies excluded loss caused by virus. *Id.* at *3. The court found the virus exclusion "unambiguous and enforceable" and barred coverage for COVID-19 losses allegedly stemming from social distancing orders. *Id.* at *6. The court noted that the orders "only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 . . . that was the primary root cause of Plaintiffs' businesses temporarily closing." *Id.* Like the social

---

[3] A copy of the *Gavrilides* transcript is attached as Exhibit D to the Kronenberg Declaration.

[4] A copy of the *Martinez* decision is attached as Exhibit E to the Kronenberg Declaration.

distancing orders in *Diesel Barbershop*, both Orders cited by Plaintiffs here were issued in response to and as a result of the COVID-19 virus. Compl. ¶¶ 23, 34; Kronenberg Decl., Ex. A at 1; Ex. B at 1. Thus, the COVID-19 virus is plainly the root cause of Plaintiffs' loss.

To the extent that Plaintiffs attempt to avoid this simple conclusion by claiming that its loss was caused by the Orders rather than the virus (Compl. ¶¶ 23–24), the Policy's language forecloses this argument, explicitly excluding any loss or damage "caused directly *or indirectly* by . . . . [a]ny virus," and adding that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.*, Ex. 1 at 67, 70 (emphasis added). By acknowledging that COVID-19, a virus, led to the Orders and the Plaintiffs' alleged loss of income, the Complaint concedes the absence of a Covered Cause of Loss. This is the only reasonable application of the plain and ordinary meaning of the Policy's terms. Therefore, because the alleged loss due to the COVID-19 virus is not a "Covered Cause of Loss," Plaintiffs' claim must be dismissed as a matter of law. *See generally Sapiro v. Encompass Ins.*, No. C 03-4587 MHP, 2004 WL 2496090, at *5 (N.D. Cal. Nov. 2, 2004) ("Plaintiffs cannot overcome the plain meaning of this [exclusion] term by simply changing the label that they attach to the legal cause of the damage"); *Victoria Fam.*, 2020 WL 4430994, at *8 (denying claim based on exclusion because alleged proximate cause was not a distinct peril from excluded cause of loss).

As Judge Wilson recently noted, it is "implausible" to allege that social-distancing orders "are not attributable to 'any virus,' a cause which the Policy expressly excludes." *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418-SVW-AS, at *9 (C.D. Cal. Aug. 28, 2020, *as amended* Sept. 2, 2020) (Order).[5] Plaintiffs tacitly admits that the virus exclusion warrants dismissal, instead

---

[5] The amended *10E, LLC* decision is attached as Exhibit F to the Kronenberg Declaration.

arguing that it should not be enforced because it "was not reviewed with or explained to Plaintiffs[.]" Compl. ¶ 38. This argument fails under California law. "It is a general rule a party is bound by contract provisions and cannot complain of unfamiliarity of the language of a contract. . . . Thus an insured has a duty to read his policy." *Valley Casework, Inc. v. Lexington Ins. Co.*, No. D050683, 2008 WL 4726453, at *3 (Cal. Ct. App. Oct. 29, 2008) (citation omitted). Accordingly, the Complaint should be dismissed.

## II. SEPARATE AND APART FROM THE VIRUS EXCLUSION, THE COMPLAINT DOES NOT PLEAD FACTS MEETING THE BASIC REQUIREMENTS FOR CIVIL AUTHORITY COVERAGE

Even if there were no virus exclusion, the Complaint does not allege facts sufficient to satisfy the requirements for Civil Authority coverage. To assert a viable claim under the Civil Authority section of the Policy, Plaintiffs must allege that: (i) a Covered Cause of Loss caused "damage to property" within one mile of Plaintiffs' premises; (ii) a civil authority took action "in response to" dangerous "physical" conditions resulting from the damage to property; and (iii) "access" to the areas surrounding Plaintiffs' premises was prohibited by the civil authority's action. Compl., Ex. 1 at 60–61. In short, Civil Authority coverage reimburses the policyholder for loss of business income only when the government prohibits access to the policyholder's business due to damage to someone else's property. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011) ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."); *see also* Barry R. Ostrager & Thomas R. Newman, Insurance Coverage Disputes § 11.01 (19th ed. 2018) (collecting cases).

Here, the Complaint does not plead facts that satisfy any of these predicates for Civil Authority coverage.

### A. There Is No Allegation that a Covered Cause of Loss Caused Property Damage Within One Mile of Plaintiffs' Hotels.

The Complaint contends that social-distancing orders issued in response to the COVID-19 virus caused Plaintiffs to lose income. The COVID-19 virus is not a Covered Cause of Loss. *See supra* Point I. In any event, the presence of virus cells does not constitute "damage to property" anywhere, let alone within one mile of Plaintiffs' hotels. *See 10E*, No. 2:20-cv-04418-SVW-AS, at *8–9 (Wilson, J.) (denying civil authority claim premised on "vague, circuitous, and . . . fatally conclusory allegations" that "the novel coronavirus disease causes physical loss and damage" without specifying "particular property damage" within the necessary area). For there to be "damage to property," there must be some physical change in the property's condition, which is not present here. *See, e.g.*, *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780 (2d Dist. 2010) (requiring "a *physical change* in the condition of the property, *i.e.*, it must have been 'damaged' within the common understanding of that term"); *Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.,* No. CV06-4766 CAS, 2008 WL 3009889, at *4 (C.D. Cal. Mar. 20, 2008) (stating "a detrimental impact unaccompanied by a distinct, demonstrated, physical alteration of the property" is not covered property damage) (internal citation omitted); *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005) (finding the word "damage" not intended to include economic damage in civil authority coverage claim).

### B. The Orders Were Not Actions of Civil Authority Issued "In Response to Dangerous Physical Conditions" Resulting From Property Damage.

The Complaint also does not and cannot allege that generally applicable social-distancing orders were actions of civil authority taken "in response to dangerous physical conditions" resulting from an incidence of property damage. Compl., Ex. 1 at 60–61. The city and statewide Orders cited in the Complaint were

implemented to prevent the future transmission of the coronavirus among humans and were not "response[s]" to "physical" conditions resulting from property damage. *See Syufy Enters. v. Home Ins. Co. of Ind.,* No. 94-Civ-756, 1995 WL 129229, at *2–3 (N.D. Cal. Mar. 21, 1995) (rejecting claim for civil authority coverage where city-wide curfews were imposed to prevent potential riots rather than responding to adjacent property damage); *see also United Air Lines*, 439 F.3d at 134–35 (no civil authority coverage for airline after federal government shut down Washington, D.C. airport in the wake of the 9/11 terrorist attacks because order was issued due to risk of future terrorist attacks, not as result of property damage at the Pentagon).

Although Plaintiffs allege that the Fresno order "specifically referenced that it was being issued based on . . . evidence of physical damage to property," (Compl.¶ 23,) the order's reference to property damage was not an assessment of the COVID-19 virus's impact, but merely a recitation of the statutory elements for declaring a state of emergency under Fresno Municipal Code Sections 2-502 and 2-503. *See* Kronenberg Decl., Ex. B at 1. Further, the Fresno order did not impact Plaintiffs' business, and the Shelter in Place order issued by Fresno City Manager Wilma Quan was issued explicitly "to slow the spread of COVID-19" and makes no mention of property damage. *See id.*, Ex. C at 1.

### C. The Orders Did Not Prohibit Access to Plaintiffs' Properties.

Even if they were "actions of civil authority" taken in response to property damage caused by a Covered Cause of Loss, the Orders did not prohibit access to the areas immediately surrounding Plaintiffs' properties. *See* Compl., Ex. 1 at 60–61. The law is well-established that where government orders do not prohibit access to the insured's premises, as here, there is no civil authority coverage. *See Syufy*, 1995 WL 129229, at *2 (rejecting coverage because government-imposed curfews did not specifically deny physical access to plaintiff's theater even though plaintiff closed the theater for business); *Backroads Corp. v. Great N. Ins.*, No. C 03-4615 VRW, 2005 WL 1866397, at *6 (N.D. Cal. Aug. 1, 2005) (FAA orders

grounding domestic flights after September 11 did not "prohibit access to [the insured's] premises"); *Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. A-0170-15T1, 2017 WL 1731005, at *4 (N.J. App. Div. May 3, 2017) (finding that for Civil Authority Coverage to apply, access must be "totally and completely prevented, *i.e.*, made impossible").

Although Plaintiffs allege that "the public was denied access to" their hotels, the Orders on which Plaintiffs rely upon say no such thing.[6] The Orders specifically state that the public should shelter at their residences, defined to include hotels, which are allowed to remain open. Kronenberg Decl., Ex. C at 5; *see also Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-Civ-3311, at *13–15 (VEC) (S.D.N.Y. May 14, 2020) (Transcript)[7] (finding no denial of access because social distancing order in response to COVID-19 did not specifically prohibit access to plaintiff's property and noting that business interruption claim for COVID-19 business loss was likely to fail because "this kind of business interruption needs some damage to the property to prohibit you from going"). Thus, the very Orders Plaintiffs rely upon did not limit physical access to the premises or the immediate area surrounding it.

### III. THE ABSENCE OF ALLEGED DIRECT PHYSICAL LOSS OF OR DAMAGE TO PLAINTIFFS' HOTELS PRECLUDES ANY BUSINESS INCOME OR EXTRA EXPENSE CLAIM

The Complaint does not appear to seek coverage under the Business Income or Extra Expense sections of the Policy. *See* Compl. ¶ 15 (seeking coverage under the Civil Authority section of the Policy). Nor could it. For Business Income

---

[6] "When documents contain statements that contradict allegations in a complaint, the documents control," including those "incorporated by reference into a complaint[.]" *Ward v. City of Barstow*, No. EDCV 15-0444-DSF (RNB), 2015 WL 4497950, at *2 (C.D. Cal. July 22, 2015) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

[7] The *Social Life* transcript is attached as Exhibit G to the Kronenberg Declaration.

coverage to apply, Plaintiffs must have sustained a loss of income due to a suspension of operations caused by "direct physical loss of or damage to" Plaintiffs' property. Compl., Ex. 1 at 58. For Extra Expense coverage, Plaintiffs similarly must allege an expense Plaintiffs incurred that it would not have incurred "if there had been no direct physical loss or damage" to Plaintiffs' premises. *Id.* at 60; *see generally Simon Mktg. v. Gulf Ins. Co.*, 149 Cal. App. 4th 616, 623 (2d Dist. 2007) ("[T]he threshold requirement for recovery under a contract of property insurance is that the insured property has sustained physical loss or damage."). Here, the Complaint does not allege any facts to support an inference of direct physical loss of or damage to Plaintiffs' hotels.

The Complaint alleges that the cause of Plaintiffs' loss of income and additional expense was Orders issued in response to the COVID-19 virus. Compl. ¶ 35. As numerous courts have recognized in dismissing COVID-19 claims for business income coverage under precisely this same theory, such Orders do not constitute "direct physical loss or damage to property." *Gavrilides*, No. 20-258-CB-C30 ("The complaint here does not allege any physical loss of or damage to property. The complaint alleges a loss of business due to executive orders shutting down the restaurants . . . for dining in the restaurant due to the Covid-19 threat."); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *1 (D.C. Super. Aug. 6, 2020) ("[I]n the context of property insurance, the term 'direct loss' implies some form of direct physical change to the insured property."); *Diesel Barbershop*, 2020 WL 4724305, at *5 (finding no "direct physical loss" where the policyholder alleged social distancing orders implemented as a result of the COVID-19 virus); *Malaube, LLC v. Greenwich Ins. Co.*, No. 1:20-cv-22615-KMW, 2020 WL 5051581, at *20 (S.D. Fla. Aug. 26, 2020) (Report and Recommendation) ("[T]he loss must arise to actual damage . . . . it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses— not anything tangible, actual, or physical"); *10E*, No. 2:20-cv-04418-SVW-AS, at

13

*7 ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase."); *see also Social Life*, No. 20-Civ-3311, at *15 ("New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going . . . this is just not what's covered under these insurance policies.").

Under California law, physical loss or damage must be tangible, and therefore the requirement operates "to preclude any claim against the property insurer when the insured merely suffers a detrimental impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Meridian Textiles*, 2008 WL 3009889, at *4 (citation omitted). "For there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, *i.e.*, it must have been 'damaged' within the common understanding of that term." *MRI Healthcare*, 187 Cal. App. 4th at 780; *see also Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (4th Dist. 2003), *as modified on denial of reh'g* (Jan. 7, 2004) ("direct physical loss" requires loss of something that "has a material existence, formed out of tangible matter, and is perceptible to the sense of touch").

These principles were illustrated in Judge Wilson's recent decision in *10E*, No. 2:20-cv-04418-SVW-AS, a nearly identical case to the present matter in which a restaurant sought insurance coverage for business income losses and extra expense caused by public health restrictions that allegedly prohibited access to its premises. In granting the insurer's motion to dismiss, Judge Wilson held that the insured did not plausibly allege that the public health restrictions constituted "direct physical loss of or damage to property" as required for coverage under the insured's policy. *Id.* at *6–8 (citing *MRI Healthcare*, 187 Cal. App. 4th at 779). Plaintiffs' claims here fail for the same reason. *See also* Order Granting Demurrer at 1 and Hearing Transcript at 10-11, *Inns by the Sea v. Cal. Mut. Ins. Co.*, No. 20CV001274

14
Memo of Points and Authorities in Support of Defendants' Motion to Dismiss
Case No. 2-20-cv-05663-VAP-DFM

(Cal. Super. Ct. Aug. 6, 2020)[8] (sustaining demurrer where the policyholder claimed the presence of COVID-19 caused "direct physical loss of or damage to" property).

## CONCLUSION

Based on the foregoing, AmGUARD respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

Dated: September 4, 2020

Respectfully Submitted,

SIMPSON THACHER & BARTLETT LLP

By */s/ Chet A. Kronenberg*
    CHET A. KRONENBERG

1999 Avenue of the Stars, 29th Floor
Los Angeles, CA 90067
Telephone:  (310) 407-7500
Facsimile:   (310) 407-7502
Email:  ckronenberg@stblaw.com

*Attorney for Defendants*

---

[8] The *Inns by the Sea* transcript and order are attached as Exhibit H to the Kronenberg Declaration.