Darren M. Richie, Esq. (SBN 316116)
*darren@richielitigation.com*
Steve Jang, Esq. (SBN 330228)
*steve@richielitigation.com*
**RICHIE LITIGATION, P.C.**
206 W. 4th Street, Suite 330
Santa Ana, CA 92701
Tel: (213) 265-7888 | Fax: (844) 314-1380

*Attorneys for Plaintiffs West Coast Hotel Management, LLC*
*dba University Square Hotel of Fresno; and West Coast Orange Group, LLC*
*dba The Hotel Fresno*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST COAST HOTEL MANAGEMENT, LLC dba UNIVERSITY SQUARE HOTEL OF FRESNO; and WEST COAST ORANGE GROUP, LLC dba THE HOTEL FRESNO,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES, a Pennsylvania Company; AMGUARD INSURANCE COMPANY, a Pennsylvania Corporation; and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No. 2-20-cv-05663-VAP-DFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>[Filed Concurrently with Declaration of Bac Tran]<br><br>Hearing Date: October 5, 2020<br>Time: 2:00 p.m.<br>Courtroom: 8A – 1st Street Courthouse |

//
//

Plaintiffs, WEST COAST HOTEL MANAGEMENT, LLC dba UNIVERSITY SQUARE HOTEL OF FRESNO; and WEST COAST ORANGE GROUP, LLC dba THE HOTEL FRESNO, ("Plaintiffs") hereby submits their Opposition to Defendants' Motion to Dismiss. Plaintiffs' Complaint, filed on June 25, 2020, not only meets but exceeds the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), this Court has diversity jurisdiction in this matter, and the Complaint adequately alleges facts sufficient to state a claim upon which relief can be granted.

This Opposition is based on the Memorandum of Points and Authorities, the Declaration of Bac Tran, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT**……………………………………………......…1

**ARGUMENT**………………………………………………………………………..1

   I.  EVEN IF APPLICABLE, THE VIRUS EXCLUSION IS UNENFORCEABLE AGAINST PLAINTIFFS UNDER THE REASONABLE EXPECTATIONS DOCTRINE…………………………..1

   II.  PLAINTIFFS ARE ENTITLED TO COVERAGE UNDER BOTH THE BUSINESS INCOME AND CIVIL AUTHORITY COVERAGES……….5

**CONCLUSION**……....………………………………………….……………….7

# **TABLE OF AUTHORITIES**

**Page**

*Austin James Associates, Inc. v. American Intern. Specialty Lines Ins. Co.*
(2012) WL 4755394……………………………………….…………………….2

*Cantrell v. Farm Bureau Town & County Ins. Co. of Missouri*
(1994) 876 S.W.2d 660, 663……………………………………….…………...2

*Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*
(2001) 54 S.W.3d 661, 668……………………………………….…………….2

*Elliott v. Geico Indemnity Co.*
(2014) 231 Cal.App.4th 789, 795……………………………….………………3

*Krombach v. Mayflower Ins. Co., LTD.*
(1992) 827 S.W.2d 208, 210……………………………………………………....3

*Lemm v. Stillwater Land & Cattle Co.*
(1933) 217 Cal. 474, 480……………………………………………………….4

*Studio 417, Inc. v. Cincinnati Insurance Company*
(2020) WL 4692385……………………………….……………………….5,6,7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

On or about December 21, 2018, Plaintiff West Coast Hotel Management, LLC dba University Square Hotel of Fresno ("University Square Hotel") purchased an "all-risk" insurance policy from Defendants (the "Policy"). On or about December 20, 2019, University Square Hotel renewed the insurance policy for another year and added Plaintiff West Coast Orange Group, LLC dba The Hotel Fresno ("Hotel Fresno") as an additional insured property to the all-risk insurance policy (the "Renewed Policy"). These two insured hotels, University Square Hotel and Hotel Fresno, will herein be referred to collectively as the "Insured Properties."

In March 2020, Plaintiffs submitted in good faith a claim to Defendants seeking indemnification for significant business income losses they sustained due to virus and/or civil authority, which is a covered cause of loss. Defendants replied with a denial letter on April 1, 2020 wherein they stated they would not indemnify Plaintiffs' Business Income losses sustained due to Civil Authority because there was no direct physical loss of or damage to the Insured Properties and because the Policy contained a Virus Exclusion provision. Plaintiffs were not aware the Policy even contained a Virus Exclusion provision because Defendants failed to provide them the Policy's full text until April 2020 when Plaintiffs requested it after Defendants denied their claim for indemnification. Plaintiffs did in fact suffer direct physical loss at the Insured Properties due to a Covered Cause of Loss. Further, the Virus Exclusion provision is not enforceable against Plaintiffs pursuant to the Reasonable Expectations Doctrine.

## II. ARGUMENT

### A. EVEN IF APPLICABLE, THE VIRUS EXCLUSION IS UNENFORCEABLE AGAINST PLAINTIFFS UNDER THE REASONABLE EXPECTATIONS DOCTRINE

Under the Reasonable Expectations Doctrine, "an insurance policy exclusion will not apply where the insurer or agent has created in the insured a reasonable

expectation of coverage." *Austin James Associates, Inc. v. American Intern. Specialty Lines Ins. Co.* (2012) WL 4755394. "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage." *Cantrell v. Farm Bureau Town & County Ins. Co. of Missouri* (1994) 876 S.W.2d 660, 663. Insofar as an insurance policy is open to different constructions, the construction most favorable to the insured must be adopted. *Ibid.* Exceptions of exemptions and words of limitation in the nature of an exception, are strictly construed against the insurer, where they are of uncertain import or reasonably susceptible to a double construction. *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.* (2001) 54 S.W.3d 661, 668.

Bac Tran, co-owner of the Insured Properties along with his brother and sister, is relatively unsophisticated when it comes to legalese and insurance policies; he was also born in Vietnam and does not speak fluent English. (*See* Declaration of Bac Tran.) Mr. Tran purchased the University Square Hotel in 2012 and The Hotel Fresno in 2016. In 2018, he began shopping around for insurance policies but was unfamiliar with the process. Thus, he engaged a broker, Anthony Okhovat, who held himself out as an attorney to assist him in purchasing an insurance policy. (*See* Declaration of Bac Tran.) Mr. Tran relayed his insurance needs to Mr. Okhovat, essentially saying he wanted standard coverage for a hotel at a reasonable price. Mr. Okhovat then sent Mr. Tran Berkshire Hathaway Guard Insurance Companies' Final Proposal of Insurance ("Final Proposal") and Mr. Tran accepted and signed on December 19, 2018 (*See* Exhibit A – Berkshire's Proposal of Insurance). The Final Proposal was advertised as an "all-risk" policy, meaning it automatically covers any risk the policy does not explicitly omit. The Final Proposal does not mention viruses or bacteria at all even though other exclusions are explicitly mentioned such as bed bugs and acts of terrorism. In fact, Mr. Tran had to specifically sign Page 15 of Exhibit 1 to explicitly exclude coverage for acts of terrorism. Mr. Tran reasonably believed that viruses or bacteria were not excluded from coverage since the Final Proposal did not explicitly exclude them.

The Final Proposal is what induced Mr. Tran to purchase the Policy on December 19, 2018 because he reasonable believed that all the Policy exclusions were included in the Final Proposal since they are material terms.  Coverage began on December 20, 2018.  However, Defendants never provided Mr. Tran or Plaintiffs with the actual Policy or Renewed Policy after purchase, as is customary in the insurance industry, until Mr. Tran specifically requested a copy in April 2020.  (*See* Declaration of Bac Tran.)  Thus, Plaintiffs reasonably believed they were operating their hotels while being insured against viruses.  Only after receiving the original Policy did Plaintiffs realize that the Policy contained a "Virus or Bacteria" Exclusion.

However, the "Virus or Bacteria" Exclusion was included as a single sentence on page 69 of the 100-page of the Policy and was never reviewed with or explained to Mr. Tran.  This was the only reference to this Exclusion in both The Policy and The Renewed Policy – a single sentence in a combined 172 pages.  (The Final Proposal had no mention of any virus or bacteria.)  The Exclusion states, in its one-sentence entirety, "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" is excluded.  Not only is this practice unfairly deceptive, but the wording of the Exclusion itself is ambiguous.

"In the insurance context, we generally resolve ambiguities in favor of coverage." *Elliott v. Geico Indemnity Co.* (2014) 231 Cal.App.4th 789, 795.  Courts generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. *Ibid*.  These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. *Ibid*.  Because the insurer writes the policy, it is held responsible for ambiguous policy language, which is therefore construed in favor of coverage. *Ibid*.  Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Krombach v. Mayflower Ins. Co., LTD.*, 827 S.W.2d 208, 210.

The language in the Virus Exclusion does not specifically mention pandemics nor does the Policy. A pandemic is a social health crisis that afflicts entire countries and continents globally; it is much more than just a simple virus. The consequences and losses associated with a pandemic are significantly greater than those resulting from a mere virus. A global crisis like the COVID-19 pandemic is unprecedented in modern times. The last pandemic occurred in 1918, more than 100 years ago. Defendants could have specifically mentioned and/or excluded pandemics from coverage, but they deliberately chose not to. It cannot be reasonably argued that the parties to the contract (the Policy) intended for pandemics to be excluded from coverage.

"In the interpretation of contracts, the duty of the court is to ascertain the intent of the parties." *Lemm v. Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480. To do this, "the court may look to the circumstances surrounding the parties at the time they contracted including… the preliminary negotiations between the parties." *Ibid.* "In viewing the surrounding circumstances and the situation of the parties, the court may also call to its aid the events subsequent to the execution of the contract, particularly the practical construction given to the contract by the parties themselves as shedding light upon the question of their mutual intention at the time of contract." *Id.* at 788-789.

The Policy was advertised as an "all-risk" policy. Before purchasing the Policy, Mr. Tran expressed his desire to be covered for all standard risks, which he reasonably believed included viruses based on the Final Proposal. (*See* Declaration of Bac Tran.) Further, "all-risk" policies automatically cover any risk the policy does not explicitly omit. Pandemics were never explicitly omitted nor were they ever mentioned. Even if the Virus Exclusion could be considered part of the Policy, it is clear that pandemics were neither contemplated nor intended at the time of contracting and thus falls far outside the scope of the Virus Exclusion. As such, because the Policy is an "all-risk" policy and does not specifically mention pandemics, pandemics are a Covered Cause of Loss.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Virus or Bacteria Exclusion is not enforceable against Plaintiffs because it contravenes the Doctrine of Reasonable Expectations. Even if it were enforceable, global pandemics, like the current COVID-19 pandemic, were not contemplated at the time of contracting and falls outside the scope of the Virus or Bacteria Exclusion.

### B. PLAINTIFFS ARE ENTITLED TO COVERAGE UNDER BOTH THE BUSINESS INCOME AND CIVIL AUTHORITY COVERAGES

Business Income

The Policy insures against loss of Business Income resulting from a Covered Cause of Loss, providing that "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a covered Cause of Loss." That is precisely what happened here. There was both direct physical damage to and loss of the Insured Properties.

As discussed above, the Virus or Bacteria Exclusion is not enforceable against Plaintiffs. Even if it was, a global pandemic falls outside the scope of said exclusion. It is highly likely that the current pandemic, a Covered Cause of Loss as discussed above, physically damaged the Insured Properties in that it is highly likely that customers, employees, and/or other visitors to the Insured Properties were infected with COVID-19, a physical substance, and thereby infected the Insured Properties. As a result, and in conjunction with the governmental closure orders, Plaintiffs were forced to suspend their operations for health and safety reasons.

There was also physical loss due to the pandemic. The Policy does not define "physical loss" or "physical damage." The two terms are distinct. One can suffer direct physical loss without any direct physical damage or alteration to an insured property, and vice versa, as is supported by case law. "Courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is

uninhabitable or unusable for its intended purpose." *Studio 417, Inc. v. Cincinnati Insurance Company* (2020) WL 4692385. Due to the global pandemic, all travel essentially came to a halt. A hotel's clientele consists primarily of travelers. Since the pandemic broke out in early 2020, the Insured Properties suffered a drastic decline in occupancy rates from 50-60% to 5-10% because traveling came to a halt (*See* Declaration of Bac Tran). A hotel's main purpose is to shelter travelers. The pandemic effectively put an end to traveling which consequently rendered the Insured Properties unusable for their intended purpose. As such, in addition to physical damage to the Insured Properties, there was also a physical loss of the Insured Properties. Accordingly, Business Income coverage was triggered.

<u>Civil Authority</u>

Under the Policy, the Civil Authority coverage is triggered when a Covered Cause of Loss causes damage to property other than at the described premises and the action of civil authority prohibits access to the described premises, provided that: (1) access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property, and (2) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

As discussed above, it is highly likely that the COVID-19 pandemic, not only physically damaged the Insured Properties but also the immediately surrounding areas since it is likely that customers, employees, and/or other visitors to the Insured Properties and immediately surrounding areas were infected with COVID-19 and thus infected the immediately surrounding areas as well. In response to this dangerous physical condition, various closure and stay-at-home orders were issued by Governor Newsom and the County of Fresno in March 2020. Fresno issued Emergency Order

2020-02 on March 18, 2020 which mandated that businesses cease all non-essential operations at physical locations in the city in an attempt to curb the damage and spread of COVID-19. The Fresno Emergency Order also mandated that individuals shelter at their place of residence. As such, Plaintiffs were forced to cease hotel operations, which essentially and necessarily prohibited access to the Insured Properties as well as the immediately surrounding areas. In *Studio 417, Inc. v. Cincinnati Insurance Company* (2020) WL 4692385, the court found that because the civil authority coverage did not specify that coverage would trigger only if "all access" or "any access" to the premises was prohibited (as is the case here), that plaintiffs plausibly alleged that access was denied. The same applies here. Indemnification under either and/or both the Business Income and Civil Authority coverages has been triggered in this case.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be dismissed in its entirety.

Dated: September 23, 2020

Respectfully Submitted,

**RICHIE LITIGATION, P.C.**

_____

Steve Jang, Esq.

*Attorney for Plaintiffs.*