**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| West Coast Hotel Management, LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Berkshire Hathaway Guard Insurance Companies, et al.,<br><br>    Defendants. | 2:20-cv-05663-VAP-DFMx<br><br>**Order GRANTING Motion to Dismiss (Dkt. 12).** |

Defendants Berkshire Hathaway Guard Insurance Companies and AmGUARD Insurance Company ("Defendants") filed a Motion to Dismiss Plaintiffs' Complaint ("Motion"). (Dkt. 12). Plaintiffs filed an Opposition to the Motion. (Dkt. 25). After considering all papers filed in connection with the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

This matter arises out of the current COVID-19 pandemic and its significant impact on businesses across the country. (*See* Dkt. 1). Plaintiffs West Coast Hotel Management, *dba* University Square Hotel of Fresno, and West Coast Orange Group, LLC, *dba* The Hotel Fresno, each own and operate a hotel in Fresno, California. (*Id.* ¶¶ 1–2).

1

Beginning in January 2020, Plaintiffs suffered losses due to the COVID-19 pandemic. (*Id.* ¶ 21). The spread of COVID-19 internationally affected travel and resulted in fewer reservations at Plaintiffs' hotels. (*Id.*). Then in March 2020, as the virus spread domestically, the Mayor of Fresno issued an Executive Order ("Fresno Order") directing the closure of all non-essential businesses. (*See id.* ¶ 23). The Governor of California issued a similar state-wide Executive Order ("State Order") the same week. (*Id.*). Plaintiffs allege that as a direct and proximate result of these two Orders (together, the "Executive Orders"), public access to Plaintiffs' hotels was prohibited and Plaintiffs suffered severe financial losses. (*Id.* ¶ 24).

Plaintiffs' hotel properties are covered under a business insurance policy (the "Policy") issued by Defendants.[1] (*Id.* ¶ 12). The parties do not dispute that the Policy was in effect during the time period relevant to this matter. Coverage under the policy extends only to losses that result from a "Covered Cause of Loss." Excluded as a Covered Cause of Loss is any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* Ex. 1, at 67, 70). It further provides that "[s]uch loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss." (*Id.* at 67).

---

[1] Defendants assert that Berkshire Hathaway Guard Insurance Companies is not a legal entity and that Plaintiffs are insured by AmGUARD Insurance Company. (Dkt. 12 at 1). As AmGUARD is a named defendant in this action, this distinction does not affect the determination of the Motion.

Under the Policy, "Business Income" coverage is available for loss of business income sustained due to the necessary suspension of operations during a "period of restoration" when the suspension is caused by "direct physical loss of or damage to property at the described premises." (*Id.* at 58). The period of restoration begins "72 hours after the time of direct physical loss or damage" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." (*Id.* at 82). Relatedly, "Extra Expense" coverage covers expenses incurred during the period of restoration that would not have been incurred "if there had been no direct physical loss or damage to property at the described premises." (*Id.* at 60).

The Policy also provides "Civil Authority" coverage. When a Covered Cause of Loss causes damage to property outside the described premises, coverage will extend to any loss of Business Income or incurred Extra Expense caused by an action of civil authority that prohibits access to the described premises. (*Id.* at 60–61). Civil Authority coverage requires that access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and that the action of civil authority is taken in response to the damage. (*Id.*).

In January 2020, Plaintiffs sought indemnification from Defendants for incurred business losses. (Dkt. 1 ¶ 25). Defendants denied Plaintiffs' claim. (*Id.* ¶ 26). Plaintiffs filed their Complaint on June 25, 2020, seeking a judicial declaration that (i) the Executive Orders constitute civil authority

orders that prohibit access to Plaintiffs' hotels; (ii) the prohibition of access is a covered cause of loss; (iii) the prohibition of access was necessitated by physical loss of or damage to the hotels; (iv) coverage is warranted under the Policy despite the Virus Exclusion; and (v) the Policy provides Civil Authority and Business Income coverage for losses or damage due to COVID-19 and the Executive Orders.  (*Id.* ¶¶ 43–45).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

### III. EVIDENTIARY ISSUES

The Court first resolves the various evidentiary issues associated with the present Motion. The Court grants Defendants' request for judicial notice of (i) Executive Order N-33-20, issued by Governor Gavin Newsom on March 19, 2020 (Dkt. 14-1); (ii) Proclamation of the Mayor of the City of Fresno, California, issued by Mayor Lee Brand on March 16, 2020 (Dkt. 14-

5

1 2); and (iii) Emergency Order 2020-02, issued by Fresno City Manager
2 Wilma Quan on March 18, 2020 (Dkt. 14-3).  (Dkt. 13).  Judicial notice is
3 appropriate as the Complaint refers to and relies on these Orders and
4 Plaintiffs have not objected to the authenticity of the copies submitted by
5 Defendants.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A
6 court may consider evidence on which the complaint "necessarily relies" if:
7 (1) the complaint refers to the document; (2) the document is central to the
8 plaintiff's claim; and (3) no party questions the authenticity of the copy
9 attached to the 12(b)(6) motion.").  Additionally, these Orders are
10 appropriate for judicial notice as they are "matters of public record."  *Mir*,
11 844 F.2d at 649.  The Court denies Defendants' remaining requests for
12 judicial notice as the Court does not rely upon the underlying documents.
13 (Dkts. 13, 30).  Additionally, the Court will consider the Policy, which is
14 attached as an exhibit to Plaintiffs' Complaint and incorporated by reference.
15 *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th
16 Cir. 2009) ("A court may consider documents, such as the insurance
17 policies, that are incorporated by reference into the complaint.")

19 The Court also sustains Defendants' evidentiary objections.  (Dkt. 28).
20 The Court will not consider the Declaration of Bac Tran (Dkt. 26), as well as
21 the portions of Plaintiffs' Opposition referring to the Declaration, and the
22 "Proposal of Insurance" attached as an exhibit to Plaintiffs' Opposition.  In
23 support of their Opposition, Plaintiffs have relied improperly on unpled
24 factual allegations and documents not attached or referred to in their
25 Complaint nor judicially noticeable.  As explained above, on a motion to
26 dismiss, the Court will consider only the complaint, documents incorporated

by reference, and other matters appropriate for judicial notice. To the extent Plaintiffs' Opposition cites to or relies upon other facts outside the Complaint, the Court will disregard them.

## IV. DISCUSSION

Plaintiff seeks several declarations from the Court which would, in effect, establish that (1) coverage under the Business Income and Civil Authority provisions of the Policy was triggered under the circumstances alleged in the Complaint and (2) the Virus Exclusion does not preclude coverage. The Court addresses each of these three contested Policy provisions in turn.

### A. Business Income Coverage

Under California law, "interpretation of an insurance policy is a question of law."[2] *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115, 988 (1999). "When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (citation and quotation marks omitted). In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993); *Palmer*, 21 Cal. 4th at 1115).

---

[2] The parties do not dispute that California law governs the interpretation of the Policy.

7

Accordingly, the Court examines the Business Income provisions in context to determine if Plaintiffs have stated a legally cognizable claim. Business Income coverage requires that Plaintiffs suffer "direct physical loss of or damage to property." (Dkt. 1 Ex. 1, at 58). While "direct physical loss of or damage to property" is not defined in the Policy, it plainly requires, at minimum, that the loss or damage be physical in nature. Indeed, the Policy contemplates a "period of restoration" after such loss or damage during which property is "repaired, rebuilt, or replaced." (*Id.* at 82). This interpretation is consistent with the interpretations given to similar or identical language by courts applying California law. *See 10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-ASx, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020) (holding that "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration'") (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th, 766, 799 (2010)); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04423-AB-SKx, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020) (same); *Plan Check Downtown III, LLC v. Amguard Ins. Co.*, No. CV 20-6954-GW-SKx, 2020 WL 5742712, at *4–7 (C.D. Cal. Sept. 10, 2020) (applying a physical alteration standard in determining if insured alleged "physical loss of or damage to property"); *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2003) (holding that a direct physical loss can exist only where the property at issue has "a material existence, formed out of tangible matter, and is perceptible to the sense of touch").

Here, Plaintiffs' Complaint establishes that they suffered a temporary loss of economically valuable use of their hotels due to a decrease in patronage or the Executive Orders.  (*See* Dkt. 1).  Plaintiffs do not claim that any property has undergone a physical alteration or needs to be "repaired, rebuilt, or replaced."[3]  The Complaint does not allege that Plaintiffs are not in possession of their hotels and the property contained within them.  Instead, Plaintiffs contend that the loss of *use* of their properties is sufficient to trigger coverage under the Policy.  (Dkt. 25 at 5–6).  Under California law, however, a "detrimental economic impact" alone—as Plaintiffs have alleged—is not compensable under a property insurance contract.  *MRI Healthcare*, 187 Cal. App. 4th at 779; *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) ("[W]hen it comes to property insurance, diminution in value is not a covered peril, it is a measure of a loss.").  Hence, Plaintiffs cannot state a legally cognizable claim based on the temporary loss of use of property alleged here.[4]  *See 10E*, 2020 WL 5359653, at *6 (dismissing claim because losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase); *Mark's Engine Co.*, 2020 WL 5938689, at *3 (same).

---

[3] To the extent Plaintiffs have attempted to argue that physical alteration occurred, they have failed to do so in a non-conclusory manner.  The Court addresses this failure below.

[4] Plaintiff relies on *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), a case from the Western District of Missouri applying Missouri law.  (Dkt. 25 at 5–6).  The Court chooses to follow the California authorities cited herein.  Moreover, the insurance policy in question in *Studio 417* did not have a virus exclusion which, as discussed below, precludes coverage in the present matter.  2020 WL 4692385, at *1.

In their Opposition, Plaintiffs argue that there was physical damage to their property as a result of the physical nature of COVID-19. (Dkt. 25 at 5). Plaintiffs' Complaint, however, lacks the factual allegations needed to lend this theory plausibility. The Complaint merely states that there was "direct physical loss of or damage to the [hotels]." (Dkt. 1 ¶ 27). The Court disregards this conclusory allegation. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Absent that allegation, Plaintiffs' Complaint provides only generic statements regarding the physical nature of COVID-19 and the number of cases in California and Fresno County. (Dkt. 1 ¶¶ 28–33). Critically, the Complaint does not attempt to connect those allegations to any losses or damage at Plaintiffs' properties. Although Plaintiffs attempt belatedly to do so in their Opposition, the Court will not consider those new factual allegations.

### B. Civil Authority Coverage

Unlike the Business Income provisions, the Civil Authority provisions provide coverage for certain economic losses suffered by an insured in the absence of damage to the insured's property. (*See* Dkt. 1 Ex. 1, at 60–61). As is expected for a property insurance policy, the requirement of property damage is not eliminated. (*Id.*). Instead, coverage is premised on damage to property other than the insured's but within one mile of the insured's premises. (*Id.*). The insured's losses must result from an act of a civil authority, taken in response to that property damage, that prohibits access

to the area immediately surrounding the damaged property, including the insured's premises.  (*Id.*).

Here, Plaintiffs request declaratory relief establishing the existence of Civil Authority coverage under the facts alleged in the Complaint.  (*See* Dkt. 1 ¶¶ 43–45).  While Plaintiffs briefly describe the Executive Orders—the acts of civil authority at issue—and contend they were issued based on "evidence of physical damage to property," Plaintiffs nevertheless fail to provide sufficient non-conclusory allegations to state a plausible claim.  (*Id.* ¶ 23).  Besides the generic descriptions of the Executive Orders, Plaintiffs' Complaint contains unsupported statements like "the properties that are damaged are in the immediate area of the [hotels]."  (*Id.* ¶¶ 23–24).  Plaintiffs simply have recited the coverage criteria set forth in the Policy, and such bare allegations cannot support Plaintiffs' request for declaratory relief.  *See Iqbal*, 556 U.S. at 678 (a court need not take as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"); *10E*, 2020 WL 539653, at *6 (granting motion to dismiss claim for civil authority coverage where plaintiff "paraphrase[d] the language of the Policy without specifying facts that could support recovery under the Policy").

**C. Virus Exclusion**

As with the other provisions of an insurance policy, "[t]he interpretation of an exclusionary clause is an issue of law."  *Marquez Knolls Property Owners Assoc., Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal. App. 4th 228, 233–234 (2007).  To be enforceable, a coverage exclusion must be

11

"conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004); *see also Ausmus v. Lexington Ins. Co.*, No. 08–CV–2342 L(LSP), 2009 WL 1098627, at *4 (S.D. Cal. Apr. 22, 2009) *aff'd*, 414 F. App'x 76 (9th Cir. 2011) (granting motion to dismiss because applicable exclusion was conspicuous and clear).

The Policy here excludes as a Covered Cause of Loss any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Dkt. 1 Ex. 1, at 67, 70). Coverage under the Business Income and Civil Authority provisions requires that the claimed loss or damage results from, or is caused by, a "Covered Cause of Loss." (*Id.* at 58, 60–61). Plaintiffs seek a declaration from the Court that there is "coverage under the Policy despite the Virus Exclusion provision." (Dkt. 1 ¶ 44). Defendants assert that the Virus Exclusion provision precludes all requested relief because it prevents coverage under the Policy.[5] (Dkt. 12 at 6–7).

The Court first analyzes the enforceability of the Virus Exclusion. A limitation on coverage is plain and clear when it is communicated in language understandable by the average layperson. *Nat'l Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal.App.3d 452, 457 (1990). Here, the Virus Exclusion

---

[5] Typically, the insurer bears the burden of proving the applicability of an exclusion. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir. 1989). Defendants have met that burden. Plaintiffs, however, request declaratory relief regarding the applicability of the Virus Exclusion. Accordingly, Plaintiffs must also allege facts that state a plausible claim for relief.

is plainly stated in language free of jargon. The Exclusion defines that losses are excluded whether caused directly or indirectly by a virus and specifies the viruses that are excluded, *i.e.* those that induce or can induce physical distress, illness, or disease. (*See* Dkt. 1 Ex. 1, at 67, 70). The Court can see no grounds for determining that this limitation is anything but plain and clear.

The Virus Exclusion is also conspicuous within the Policy. An exclusion "must be placed and printed so that it will attract the reader's attention." *Haynes*, 32 Cal.4th at 1204. Plaintiffs assert that the Exclusion was included "as three sentences" buried within the "100+ page policy packet." (Dkt. 1 ¶ 37). The body of the Policy, sans endorsements, however, is 48 pages long. (*See id.* Ex. 1, at 54–101). The Exclusion is identified in the Form Index that precedes the Policy, which states that the "Virus or Bacteria Exclusion" is located on page 17 of the Policy. (*Id.* at 53). The Virus Exclusion is in fact located on page 17 under a bold-font heading titled "Virus or Bacteria." (*Id.* at 70). It is also located alongside other Policy exclusions under another bold-font heading that sensibly reads, "Exclusions." (*Id.* at 67, 70). As the Virus Exclusion is both conspicuous and clear, it is enforceable against Plaintiffs.

Under the facts alleged in the Complaint, the Court determines that the Virus Exclusion precludes coverage. Plaintiffs' Complaint contains multiple admissions that their losses were caused directly or indirectly by a virus capable of inducing disease. First, Plaintiffs concede that "COVID-19 is an infectious disease caused by a virus." (Dkt. 1 ¶ 19). Plaintiffs then assert

that "*due to the COVID-19 outbreak*, Plaintiffs experienced a significant decline in hotel reservations and suffered significant economic losses." (*Id.* ¶ 21 (emphasis added)). Plaintiffs also assert that they "have suffered, and continue to suffer, significant losses from the closure of their [hotels] and related losses *due to the COVID-19 pandemic.*" (*Id.* ¶ 42 (emphasis added)). Even if Plaintiffs were to argue that their losses were caused solely by the Executive Orders and not "directly or indirectly" by the virus, Plaintiffs have already admitted that the Orders were issued "to halt the physical spread of COVID-19." (*Id.* ¶ 34). Indeed, the text of the Orders, of which the Court takes judicial notice, allows no other conclusion. (*See* Dkt. 14-1 (State Order providing that "[o]ur goal is simple, we want to bend the curve, and disrupt the spread of the virus"); Dkt. 14-2 (Fresno Order issued in response to "conditions of extreme peril . . . with respect to the international COVID-19 pandemic")).

Plaintiffs do not dispute that their losses were caused by a virus. Instead, Plaintiffs argue that the Virus Exclusion is unenforceable under the reasonable expectations doctrine. (*See* Dkt. 25 at 1–5). Specifically, Plaintiffs allege that Defendants did not highlight or explain the Virus Exclusion provision before Plaintiffs purchased the Policy, causing Plaintiffs to believe they had coverage under the factual circumstances alleged in the Complaint. (Dkt. 1 ¶ 38). The doctrine, however, does not give courts a license to refuse to enforce contract terms based on one party's expectations. "[A]n insured's reasonable expectation of coverage is merely an interpretative tool used to resolve an ambiguity once it is found to exist and cannot be relied upon to create an ambiguity where none exists." *Cal.*

*Traditions, Inc. v. Claremont Liab. Ins. Co.*, 197 Cal. App. 4th 410, 420 (2011) (internal citations omitted).

Plaintiffs argue that ambiguity exists because "[a] pandemic is a social health crisis that afflicts entire countries and continents globally; it is much more than just a simple virus.[6] (Dkt. 25 at 4). The Court declines to accept Plaintiffs' interpretation. As Defendants correctly note, Plaintiffs' interpretation defies the plain and unambiguous text of the Policy and is "akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire." (Dkt. 27 at 3). As Plaintiffs are unable to circumvent the Virus Exclusion, Plaintiffs' Complaint fails to state a legally cognizable claim for relief.

### D.   Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." When considering whether to grant leave to amend pleadings, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, leave to amend should be denied only when allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

---

[6] Plaintiffs also raise this interpretation as an independent reason for the Court to determine that the COVID-19 pandemic is outside the scope of the Virus Exclusion. This does not alter the Court's rejection of Plaintiffs' interpretation.

When dismissing a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Eldridge v. Block*, 832 F.2d 1132, 1130 (9th Cir. 1987) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Here, as the Virus Exclusion precludes coverage under the Civil Authority and Business Income provisions of the Policy, the Court determines that granting Plaintiffs leave to amend would be futile. Accordingly, the Court GRANTS the Motion without leave to amend.

## V. CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: 10/27/20

Virginia A. Phillips
United States District Judge